# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cr-62-DSD-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Shari Ann Natysin, | |
| Defendant. | |

Kimberly A. Svendsen, United States Attorney's Office, 300 S. 4th St Ste 600, Minneapolis, MN 55415, Counsel for the United States of America.

Jordan S. Kushner, Law Office of Jordan S. Kushner, 431 S 7th Street, Ste 2446, Minneapolis, MN 55415, Counsel for Shari Ann Natysin.

The defendant, Shari Ann Natysin, filed pretrial motions in this matter and the Court conducted a hearing on those motions on July 10, 2018.  (*See* ECF No. 31.) Remaining before the Court are two motions.

First, Ms. Natysin argues that the evidence resulting from the January 10, 2018 search of her home should be suppressed because the scope of the warrant was overly broad and vague.  (ECF No. 25.)  Second, Ms. Natysin moves this Court to dismiss the Indictment against her, arguing that it fails to sufficiently state an offense.  (ECF No. 26.)  Neither motion required testimony, and both were submitted on the pleadings.  For the reasons set forth below, the Court recommends that Ms. Natysin's remaining motions be denied.

1

## I.    Background

Ms. Natysin was originally indicted on nine counts of wire fraud, alleging a scheme that lasted over the period of a year.[1]  The indictment alleges that Ms. Natysin "used her position as the bookkeeper and office manager at Victim Company to direct Victim Company's payroll processing service to transfer a total of more than $630,000….to [Ms. Natysin's] personal bank accounts."  (ECF No. 1 ¶ 5.)  Specifically, the government claims that Ms. Natysin used the funds she obtained to pay for personal expenses, such as restitution payments for a prior theft-by-swindle, cruise tickets, tickets to concerts and sporting events, and payments to family.  (*Id.* ¶ 7.)  The indictment further describes that once Ms. Natysin was discovered and subsequently terminated from her position at Victim Company, she made fraudulent unemployment claims to obtain benefits to which she was not entitled.  (*Id.* ¶ 8.)

## II.    Motion to Suppress Evidence

On January 9, 2018, Magistrate Judge David Schultz issued a search warrant authorizing a search of Ms. Natysin's residence and the seizure of a variety of items, including financial, business, and property records.  (Govt. Ex. 1.)  Law enforcement officers executed the warrant on January 10, 2018.  (*Id.*)  This search resulted in the seizure of numerous business and personal financial records, which gave rise to the charges underlying this matter.  Ms. Natysin contends that the warrant was overly broad and argues that the evidence obtained from the search should be excluded.  The Court disagrees.

### A. The Search Warrant

The portion of the search warrant at issue in Ms. Natysin's motion is Attachment B, which states the items to be seized.  In particular, the warrant authorized the seizure of:

---

[1] On August 21, 2018, the government filed a superseding indictment against Ms. Natysin, adding several new charges.  (ECF No. 36.)  As of the date of this Report and Recommendation, Ms. Natysin has not challenged the new charges in the superseding indictment.  Therefore, this Report and Recommendation only addresses the charges in the original indictment, 1–9, which are the same in the superseding indictment.

> For the period of January 1, 2014 to the present, records, documents, information and items, including those created, maintained, or stored electronically, digitally, or optically, related to Additional Concrete Services, Gopher State Cleaning, Shari Ann Johnson (also known as Shari Ann Natysin), or Johnson's husband, A.G.N. ….

A fifteen-item list of specific categories of items to be seized followed this language. These included, *inter alia*, "[a]ny and all records that show ownership, control, affiliation, and operation of any of the above-listed entities…;" "[f]inancial statements and reports…and other records related to revenues, expenses, assets, liabilities, financial obligations, capital expenditures, and the receipt…of income, monies, funds, or assets;" "[d]ocuments and records reflecting or related to the submission of payroll to ADP from Additional Concrete Services or Gopher State Cleaning…;" "[d]ocuments and records reflecting or related to the submission of unemployment claims to the Minnesota Department of Employment and Economic Development;" and other items such as computers and drives where additional evidence might be stored. (Govt. Ex. 1, Attachment B.)

Further, the search warrant was accompanied by an affidavit prepared by Special Agent Jared F. Kary, which described in significant detail facts regarding Ms. Natysin's position at Victim Company, human resources records that suggested fraudulent behavior on behalf of Ms. Natysin, unemployment records suggesting the same, and other facts and details establishing probable cause for the search warrant to issue. (Govt. Ex. 1., 1–37.)

## B. Analysis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A warrant "must particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)). Ms. Natysin only challenges whether the warrant meets the particularity requirement.

A warrant meets the particularity requirement when it is "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United*

3

*States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014). Courts review the particularity of a warrant based on factors such as "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011).

Warrants in fraud cases are subject to some unique exceptions to the particularity requirement. "Fraud, by its nature, entails concealment." *United States v. Mathison*, 157 F.3d 541, 549 (8th Cir. 1998). Recognizing this, the Eighth Circuit has held that "a search warrant involving a scheme to defraud is sufficiently particular in its description of the items to be seized if it is as specific as the circumstances and nature of activity under investigation permit." *Sigillito*, 759 F.3d at 924 (quoting *United States v. Saunders* 957 F.2d 1488, 1491 (8th Cir. 1992)). As such, warrants related to fraud must be read in the context of the breadth of the alleged fraud and the overall purpose of the search. *Id.* (detailing the permeated-fraud exception, allowing the government to seize broad categories of records when fraud in the business was pervasive); *Fiorito*, 640 F.3d at 347 ("The broad language of the warrant must be given a practical, rather than hypertechnical, interpretation that is cabined by the purpose for which it issued."). Viewed through this lens, the Court concludes that the search warrant was sufficiently particular.

Given the scope and pervasiveness of the fraud alleged, the search warrant issued for Ms. Natysin's home was not overly broad. The broad opening paragraph of Attachment B is limited by its own language both in temporal scope and by subject matter. (Govt. Ex. 1, Attachment B.) The opening paragraph is followed by a list of specific records and items sought by the warrant. *See, e.g.*, *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976) (finding a warrant was sufficiently limited by "a lengthy list of specified and particular items to be seized."); *Fiorito*, 640 F.3d at 346 (finding a warrant to be sufficiently particularized "in light of the illustrative list of items to be seized and the overarching purpose of the search."); *Mathison*, 157 F.3d at 549 (finding that a broad search warrant including 17 corporate entities potentially involved in criminal wrongdoing was sufficiently particular in light of the fraud alleged). Although the list of items sought by the warrant is exhaustive, the warrant did not authorize a "general exploratory rummaging" through Ms. Natysin's home. *United States v. Hibbard*, 963 F.2d 1100, 1102 (8th Cir. 1992). Rather, it authorized a search the scope of which was defined by the scope of the alleged fraud. *See Sigillito*, 759 F.3d at 924; *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986) (finding that a broad

4

search warrant was sufficiently particular when probable cause existed to believe that fraud was widespread).

Ms. Natysin, recognizing that the Eighth Circuit's decision in *United States v. Fiorito* is a significant barrier to suppression in this case, attempts to distinguish *Fiorito* by arguing that the warrant in her case is far broader. This Court disagrees. The warrant in *Fiorito* contained an expansive paragraph near the beginning that authorized a search for "entire files" involving the defendant, including broad categories of financial and real estate records. 640 F.3d at 346. The *Fiorito* court rejected a claim of overbreadth, concluding that the challenged warrant was sufficiently particularized when read in context of the list that followed the opening paragraph, as well as the purpose for which it was issued. *Id.* at 347. The result is the same when reading the warrant Ms. Natysin challenges in its appropriate context. Much like the warrant in *Fiorito*, the warrant here has a broad paragraph followed by an illustrative list of specific items to be seized. Following *Fiorito*'s example and giving the warrant a "practical" interpretation informed by the "purpose for which it is issued," this Court finds that the warrant was sufficiently particular. This finding is supported in part by the fact the affidavit accompanied the warrant to the search and was available for officers conducting the search to refer to. This affidavit helps further define the "overarching purpose of the search," which was to discover evidence related to a well-defined fraudulent wire transfer scheme. *See id.* The fact that the warrant permitted seizure of items maintained or stored by Ms. Natysin's husband does not render the warrant overbroad in this circumstance, where the fraud alleged is widespread and where fraudulent payments were concealed by being made to bank accounts owned by Ms. Natysin's husband. (*See generally* Gov't Ex. 1, Affidavit of Jared F. Kary; *see also id.* at ¶ 36.)

In sum, because the warrant was sufficiently particular, the Court recommends that Ms. Natysin's motion to exclude evidence obtained as a result of the search should be denied.

### III.    Motion to Dismiss Indictment

Ms. Natysin next moves to dismiss the indictment against her for failure to state an offense. (ECF No. 26.) A fraud indictment must include specific facts with "such reasonable particularity…as will…apprise [the defendant], with reasonable certainty, of the nature of the accusation." *United States v. Steffens*, 687 F.3d 1104, 1113

(8th Cir. 2012) (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir. 1906)). Although sufficient facts to inform the defendant of the charges against them are necessary, a motion to dismiss an indictment is not intended to be a pretrial determination of the sufficiency of the government's evidence. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (citation and quotation omitted). As such, an indictment "should be deemed sufficient unless no reasonable construction can be said to charge the offense." *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir. 1998) (quoting *United States v. Morris*, 18 F.3d 562, 568 (8th Cir. 1994)).

Typically, an indictment is "sufficient if its language tracks the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). The statutory elements of wire fraud are: (1) a scheme to defraud; (2) the use of interstate or foreign wires to perpetuate the scheme; and (3) intent to cause harm. *See* 18 U.S.C. § 1343; *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007). Ms. Natysin argues that the indictment is insufficient because each count does not specifically allege the underlying activity as fraudulent. This Court disagrees with Ms. Natysin's reading of the indictment because it fails to read the indictment in its totality, and because it misstates the law.

An "indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Afremov*, No. 06-cr-196 (JRT/SRN), 2007 WL 3237630 at *15 (D. Minn. Oct. 30, 2007). Reading the challenged indictment as a whole, it is more than adequate to put Ms. Natysin on notice of the charges against her. The indictment carefully lays out the factual background to support the fraud allegations, describing the fraud scheme in detail, and then explicitly incorporates that by reference into the individual counts. (March 20, 2018 Indictment, ECF No. 1, ¶ 9.) It continues by alleging nine specific communications made "for the purpose of executing and attempting to execute the above-described scheme…to defraud." (March 20, 2018 Indictment, ¶ 10.) In total, it is clear that the indictment reasonably apprises Ms. Natysin of the nature of the accusation against her. *See Steffens*, 687 F.3d at 1113.

At a more basic level, Ms. Natysin's argument that the indictment is invalid because each count does not allege that the specific wire communication itself was false or fraudulent is simply incorrect. In a fraud prosecution, each wire communication "need not disclose on its face a fraudulent representation or purpose, but need only be intended to assist in carrying out the scheme to defraud." *United*

*States v. Maze*, 414 U.S. 395, 410 (1974).  As discussed above, the communications alleged in the indictment here are all alleged to have been made "for the purpose of executing and attempting to execute [the alleged scheme to defraud.]"  (March 20, 2018 Indictment ¶ 10.)  No more is required.

Based on the foregoing, the Court makes the following recommendation:

1. Ms. Natysin's Motion to Suppress Evidence from Search and Seizure (ECF No. 25) be **DENIED**.

2. Ms. Natysin's Motion to Dismiss Indictment for Failure to State Offense (ECF No. 26) be **DENIED**.

Date: August 28, 2018

*/s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.